AO 106 (Rev. 5/85) Affidavit for Search Warrant

# United States District Court

2008 AUG -7 PM 12:01

Southern DISTRICT OF California

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| In the Matter of the Search of<br>(Name, address or brief description of person or property to be searched)<br>Express Mail Parcel #EH355201570US addressed to Mike Ramos 20 Frances Pl Keansburg N.J. 07734. The parcel had the return address information of Scott Brown 214 Holzapple Ln San Marcos C.A. 92026. | BY: ______ DEPUTY<br>**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**<br>CASE NUMBER: '08 MJ 2448 |
|---|---|

I, Kelly E. Cain being duly sworn depose and say:

I am a(n) U. S. Postal Inspector (Official Title) and have reason to believe

that on the premises known as (name, description and/or location)

Express Mail Parcel #EH355201570US addressed to Mike Ramos 20 Frances Pl Keansburg N.J. 07734. The parcel had the return address information of Scott Brown 214 Holzapple Ln San Marcos C.A. 92026 which is in the custody of the U. S. Postal Inspection Service

in the Southern District of California

there is now concealed property, namely (describe the person or property)

Controlled substances, materials, and documents reflecting the distribution of controlled substances through the United States Mail, including money paid for controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence and contraband

in violation of Title 21 United States Code, Section(s) 841(a)(1), 843(b) and 846.

The facts to support the issuance of a Search Warrant are as follows:

See attached.

Continued on the attached sheet and made a part hereof. X Yes ___No

[signature]
Signature of Affiant

Sworn to before me, and subscribed in my presence

8/5/2008 at San Diego, CA
Date City and State

RUBEN B. BROOKS
U.S. MAGISTRATE JUDGE

U.S. Magistrate Judge
Name and Title of Judicial Officer

[signature]
Signature of Judicial Officer

AFFIDAVIT FOR SEARCH WARRANT

I, Kelly E. Cain, being duly sworn hereby depose and state:

1. I am a United States Postal Inspector currently assigned to the San Diego Field Office of the Postal Inspection and my duties include investigating violations of the Drug Abuse Prevention and Control Act.

2. This affidavit is submitted in support of an application for a search warrant for the following Express Mail Parcel:

   a) Express Mail Parcel #EH355201570US addressed to "Mike Ramos 20 Frances Pl Keansburg N.J. 07734". The parcel had the return address information of "Scott Brown 214 Holzapple Ln San Marcos C.A. 92026".

3. I have been employed as a Postal Inspector since August 2006. From August 2006 through October 2006, I attended the Basic Postal Inspector Academy. Starting October 2006, I was assigned to the Prohibited Mailings Illegal Narcotics Team. Previous to that, I was employed with the San Diego County Sheriff's Department for approximately three and one-half years and with the San Diego State University Police Department for approximately six years. During that time, I was involved in several narcotics related investigations. I received training from the California Department of Justice Advanced Training Center on Drug Identification & Influence, the California Narcotic Officers Association on Drug Abuse Recognition, the Drug Enforcement Administration on Basic Narcotic Investigations and the U.S. Postal Inspection Service which included instruction regarding individuals using the U.S. Mails to transport controlled substances and

proceeds from the sale of controlled substances as well as the use of Postal Money Orders to launder the proceeds of controlled substances transactions.

4. Based upon my training, experience and discussions with other Postal Inspectors and agents I know the following in summary:

a. Individuals who regularly handle controlled substances leave the scent of controlled substances on the currency and other items they handle. Proceeds from these sales are often stored in close proximity to the controlled substances, thereby transferring the odor of the controlled substance to the monies and packaging materials. Narcotic canines are trained to alert on the scents of controlled substances.

b. The Postal Inspection Service and DEA Narcotic Task Force Commercial Interdiction Team have worked aggressively to limit the use of shipping companies and the U.S. Mail for the transportation of controlled substance through these companies.

c. Ongoing investigations have disclosed that Priority/overnight and "two day" parcel deliveries have become a method of choice by drug dealers for the transportation of contraband or the proceeds of narcotic sales.

d. I know that Southern California is a source region for controlled substances being mailed throughout the United States. The proceeds from these narcotic transactions are then transported via the U.S. Mails and other communication facilities back to Southern California, the source of the controlled substances.

e. Drug dealers prefer the U.S. Mail, (but will sometimes utilize commercial shipping companies), specifically "Express Mail" or "Priority Mail," for the narcotic or narcotic proceeds transportation for various reasons, some of which are listed below:

1. Items sent via "Express Mail" or "Priority Mail" are considered to be first-class mail, therefore, cannot be examined without a Federal Search Warrant.
2. "Express Mail" is usually requested to be delivered by the next day's mail.
3. "Priority Mail" is usually requested to be delivered within two days of mailing.
4. Dispatch times for "Express Mail" are specific and are controllable by the mailer/shipper.
5. Any delay to the mail is an indication to the mailer the mail items have been possibly compromised by law enforcement agencies to obtain a search warrant.
6. While it is not always the case that a delay of "Express Mail" or "Priority Mail" is for law enforcement purposes, those involved in illegal transactions have found that the odds are against delays in deliveries of "Express Mail" or "Priority Mail" by United States Postal Service.
7. "Express Mail" and Priority Mail" may weigh up to 70 pounds and is desired for large volume shipments.

f. Businesses are more likely to use Express Mail and Priority Mail than First-class Mail in the course of normal business and will often use an Express Mail Corporate Account Number for the billing of the mailed articles.

g. Criminals who are involved in trafficking of controlled substances and drug proceeds will often receive multiple Express Mail articles within a short time period of each other.

h. Criminals who are involved in trafficking of controlled substances and drug proceeds will often use multiple Post Office Boxes, Commercial Receiving Agencies and addresses in foreign countries to conceal their true identities and place of residence.

i. I also know that drug related parcels containing currency, checks or money orders sometimes do not contain the presence of controlled substances because persons involved in shipping often utilize packing methods and sanitation procedures to conceal the odor of controlled substances.

j. I also know from talking to U.S. Postal Service Supervisors and employees responsible for handling the mail that Express Mail is insured for up to $100 in case of loss or damage. Insurance for Priority Mail may be purchased at an additional fee. Customers are discouraged from sending U.S. currency via the U.S. Mails and are encouraged to purchase negotiable instruments as a means to send currency by the U.S. Postal Service.

5. The information in this affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience as well as information related to me by other Postal Inspectors and law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

6. On 08-01-08, Postal Inspectors were conducting a routine interdiction at the Midway Processing & Distribution Facility in San Diego, CA and came in contact with Express Mail Parcel #EH355201570US. The parcel was addressed to "Mike Ramos 20 Frances Pl Keansburg N.J. 07734". The parcel had the return address information of "Scott Brown 214 Holzapple Ln San Marcos C.A. 92026". Postal Inspectors became suspicious of the subject parcel for the following reasons: The zip code listed for the return address of 92026 was an Escondido zip code, not a San Marcos zip code. Therefore, the return address was believed to be fictitious. Postal Inspectors took custody of the subject parcel for further investigation. Postal Inspectors searched an address database system for the return address of "214 Holzapple Ln San Marcos C.A. 92026". The address was invalid. Postal Inspectors searched an address database system for the recipient address of "20 Frances Pl Keansburg N.J. 07734". The address appeared to be a valid address; however, the name "Mike Ramos" was not associated with that address.

7. On 08-05-08, Postal Inspector K. Cain searched a U.S. Postal Service data base system and learned that someone named Scott Brown had contacted the U.S. Postal Service to check the status of Express Mail Parcel #EH355201570US. Brown left a contact phone number of (760) 576-9009. Inspector Cain contacted Brown over the telephone and identified himself as a postal employee. Inspector Cain told Brown the parcel was detained for security reasons and asked Brown what the contents were inside of Express Mail Parcel #EH355201570US. Brown said the box contained an additional box, chess

pieces and $150 in cash. Brown said he was sending the items to his cousin. Inspector Cain told Brown the parcel was suspicious because the return address was not valid. Brown said he wrote the wrong zip code on the label. Brown said the zip code should have been 92069, not 92026. Brown said he used to live in Escondido and wrote down the 92026 zip code by mistake. Brown confirmed his address was 214 Holzapple Lane, San Marcos, CA, 92069. Brown said he lived at the Island Apartments. Inspector Cain asked Brown for consent to open the parcel to verify the contents. Brown refused to give consent. Brown said he was worried about the money inside the parcel being lost and he did not pay for insurance for the parcel. Inspector Cain told Brown he was a Postal Inspector and was only interested in verifying the contents inside the parcel. Inspector Cain assured Brown that the money would not become lost. Brown again refused to give consent.

8. After speaking with Brown, Inspector Cain contacted the San Marcos Post Office. Inspector Cain verified with a postal employee that the return address on Holzapple Lane was still an invalid address because Holzapple Lane begins at the 700 block. The postal employee did not know if the Island Apartments were located on Holzapple Lane, but thought the Island Apartments were located on the same route.

9. On 08-05-08, Postal Inspector Cain met with San Diego Police Department Detective Conrad DeCastro and his trained narcotic detection canine Blaze, at the United States Postal Inspection Service San Diego Field Office. Detective DeCastro and Blaze conducted an exterior examination of the subject Express Mail Parcel #EH355201570US. When Blaze examined the parcel described above, Detective DeCastro told Inspector Cain that Blaze had alerted to the presence of the odor of controlled substances. Inspector Cain then secured the subject parcel pending an application for a search warrant. The qualifications of canine Blaze are contained in Attachment A.

10. Based on the facts set forth in this affidavit, I submit that there is probable cause to believe controlled substances, notes and/or currency from the illegal sale and mailing of controlled substances is being concealed in the Express Mail parcel as described above and seek the issuance of a search warrant directing the search of the article as described above and the seizure of the article, any controlled substances, currency, and/or materials and documents reflecting the distribution of controlled substances, all in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

Kelly E. Cain
Postal Inspector

Sworn to before me, and subscribed in my presence, on this
5th Day of August, 2008.

U. S. Magistrate Judge

**ATTACHMENT A**

Conrad V. DeCastro, ID #3954 is currently a Detective for the San Diego Police Department (SDPD) assigned to the San Diego Police Department's Narcotics Section since January of 2000. Detective DeCastro has been a police officer for over twenty-two (22) years and has worked as a narcotic detection dog handler since August 2003. Detective DeCastro is a member of both the California Narcotics Officers Association (CNOA) and the California Narcotics Canine Association (CNCA).

SDPD Detective DeCastro has participated in over 1,000 arrests of persons for violations of controlled substance laws. Detective DeCastro has in excess of 480 hours of formal training and extensive experience in controlled substances investigations, particularly involving marijuana, methamphetamine, cocaine and heroin; including an 80-hour POST Certified narcotic investigators course. Detective DeCastro has posed as a user of narcotics in the past, and has successfully purchased controlled substances in an undercover capacity. Detective DeCastro has been recognized as a narcotics expert by the San Diego Municipal and Superior Courts of the County of San Diego and has testified as such on numerous occasions. Detective DeCastro is familiar with the manner in which said substances are packaged, marketed and consumed. Detective DeCastro has received formal training and field experience in the identification of all types of controlled substances, particularly those mentioned above, by sight and odor.

In September 2007, "Blaze," ID# C-1088 was assigned to SDPD Detective DeCastro. Blaze has received training in the detection of marijuana, methamphetamine, cocaine and heroin under the direction of SDPD Detective and San Diego Integrated Task Force Federal Officer Steve A. Sloan. Detective Sloan is President, trainer and certifying official for the California Narcotic Canine Association (CNCA).

On May 14, 2008; after one hundred (100) hours of training in the detection of marijuana, methamphetamine, cocaine and heroin, "Blaze" was certified as 100% proficient in the detection of

same by California Narcotic Canine Association (CNCA) certifying official, SDPD Detective Steve Sloan.

Blaze's alert consists of physical and mental reactions, which include a heightened emotional state, and coming to a complete "sit" when his physical position allows. Over five (5) search warrants have been obtained on Blaze's alerts subsequent to his certification. Blaze alerts on many occasions where the controlled substances are seized because a warrant is not required, has already been obtained or consent is obtained.

SDPD Detective DeCastro and Blaze have been involved in training exercises where known controlled substances, containers, or paraphernalia were hidden. Because of the absorption of the odor, and the narcotics detection dog's inherently keen sense of smell, the narcotic detection dog will continue to alert on the container or item depending on the length of exposure to the controlled substance, the specific controlled substance, and ventilation of the item or container.

The common belief is all currency in circulation is contaminated with narcotics. A properly trained narcotic detection canine will not alert to all currency. It has been SDPD Detective DeCastro's experience; the training of the canine regarding threshold amounts of narcotic odors is the most relevant factor regarding alerts on currency. It has been Detective DeCastro's experience the training must include the establishment of a lower threshold of approximately one gram of odor or more to ensure the canine is alerting to more than average contamination. Average contamination is reported to occur through normal handling. The canine must also be "proofed" from numerous odors including currency on a regular basis to maintain consistency. These have included food, plastic bags and wrap, tape, controlled substance adulterants, circulated US Currency, and other items. Proofing is a method used in training to ensure the canine alerts only to the odors for which it is trained to alert.